## GLYNN *v.* GEORGE.

One who is in possession of land under a license, cannot dispute the title of the grantee of the party from whom such license has been derived.

After the expiration of the term of the license, his possession, as against such grantee, is that of a mere trespasser.

TRESPASS, for pulling down the plaintiff's barn and destroying 500 pounds of hay, and converting the same to the defendant's use, October 29, 1846. The surviving defendant, George, justified as the servant of Sophronia Chase, the owner of the land on which the barn stood, by whose directions, communicated through Nehemiah Chase, he entered and removed the building in a peaceable manner. It appeared that in 1834 the plaintiff entered upon the parcel of land in Haverhill, embracing the *locus in quo*, then in the possession of Nehemiah Chase, and erected the barn in controversy, and a house; and resided there till the time of the alleged trespass, a period of about fourteen years : That on the 13th of October, Sophronia Chase, in writing, directed to Nehemiah Chase, requested him to " move the old shed and barn that uncle Isaac used to occupy, that is on my land, and all the rubbish, so that you can plow :" That Nehemiah Chase, as her agent, and Foster and George as her assistants, on or about the 29th day of October, took down and removed the barn to Chase's house, who afterwards converted the materials to his own use. A small quantity of hay, found in the barn, was left on the spot, and soon afterwards destroyed by Chase's cattle.

The defendant gave in evidence a deed from Newhall Pike and James Glynn to Sophronia Chase, dated August 26, 1845, acknowledged the same day, and recorded the next, purporting to convey seventy-acre lot, No. 23, north division, in Haverhill, being the same conveyed to the grantors by Samuel Page. The land so described embraced that which the plaintiff occupied. The defendant

Glynn *v.* George.

also gave in evidence the deed of Samuel Page to New-hall Pike and James Glynn, dated March 24, 1845, and acknowledged and recorded the same day, purporting to convey the same lot. A witness testified that in May, 1846, being a constable, he served on the plaintiff a written no-tice to quit the premises then occupied by him, directed to the plaintiff, and signed by Nehemiah Chase for Sophronia Chase, and that he left the notice with the plaintiff. He also testified that in a conversation between the plaintiff, the defendant's counsel and himself, the plaintiff said that all title he had was under James Glynn; that he was in possession under James Glynn, and derived all his right from him. He further testified that in March, 1846, the plaintiff told him he had no right to the premises after the first day of April then next. Another witness testi-fied that in the spring of 1846 the plaintiff proposed to sell to him and one Perkins the manure on the premises, which he said he wanted to have removed before the first of April, because he had got to leave then, he supposed he had no right to it after that, and that he had got to leave the premises at that time. To the evidence of the contents of the written notice the plaintiff objected, upon the ground that no notice had been given to him to pro-duce the original that had been served upon him; but the objection was overruled.

A verdict was taken, by consent, for the plaintiff; judg-ment to be entered thereon, or the same to be set aside and judgment to be entered for the defendant, according to the opinion of the Superior Court upon the foregoing case.

*Goodall*, for the plaintiff.

*Hibbard*, for the defendant.

GILCHRIST, C. J. The plaintiff entered the land in question by the permission of Nehemiah Chase, who had

no title that appears, and of course was a mere trespasser at the beginning. But that fact is of no material significance, since, at a subsequent period, he appears by his own admission to have been the tenant of James Glynn, for a term that did not extend beyond the first of April, 1846. His possession, therefore, is evidence of the title of James Glynn, and this title was conveyed to Sophronia Chase. The deed of Page to Glynn and Pike of the seventy-acre lot, which embraced the premises in dispute, and the possession of the plaintiff under James Glynn, conclude all question that can arise upon the case, as to the title of Pike and Glynn, and of course the title of Sophronia Chase.

The term of the plaintiff's license to remain upon the land expired on the first of April, 1846. The land had then been conveyed to Sophronia Chase, and no pretence of a license from her is set up. The plaintiff was then upon the land clearly without right, and as a mere trespasser. No notice to quit was necessary. The defendant was properly authorized by the owner of the land to remove the building, which, being attached to the soil, was hers.

The character of a tenant did not pertain to the plaintiff, and he was not entitled to be otherwise treated than as a mere stranger, against whom the entry of the lawful owner of the land is no trespass.

There was no need of any notice to quit, and therefore the admission of evidence as to the contents of the paper left with the plaintiff was of no prejudice to the verdict—the whole matter having been superfluous and irrelevant.

There does not appear to have been anything improper in the manner in which the defendant and his associates executed the order of Sophronia Chase. They were not bound to protect the hay that was wrongfully there. The plaintiff himself was the party to have taken care of that. He kept it on the land at his own peril.

The verdict must be set aside and judgment entered for the defendant.